Judge Garth, can you hear us all right? Certainly can, Chief Judge. Okay, excellent. Good morning. First matter is Fortreau. Good morning to you. Good morning, everyone here. First matter is Fortreau v. Attorney General of the U.S. Mr. Morley. Good morning, Your Honors. My name is Stephen Morley. I represent the petitioner, Lenroy Forteau, a native of Grenada. I request to reserve three minutes for rebuttal. Okay. Nearly three years ago, this Court remanded this case to the BIA and sought pro bono counsel for Mr. Forteau. Could you speak up a little? I'm sorry. Pull the mic closer. Yes, I'm sorry. Well, we know the history of the case. Let me ask this. I get the feeling in reading this that I don't know whether or not you and Ms. Friedman just don't get along, whether or not Mr. Fortreau, I guess it is, has done something to really tick off the government of the United States. But it's a bizarre kind of case. You ask for a briefing schedule, and they respond by denying your appeal on remand. And then we enter a stay of removal, and they respond by sending him back, removing him. And a year later, they bring him back, and they detain him. It's just bizarre. I don't know what the government had in mind, but have you done something? I don't attribute any misfeasance or malfeasance to the government. Ms. Friedman and I were talking about sort of the chaotic nature of the BIA. And I think they issue a remand notice to the respondent in August of 2007, and on it it says, if you want counsel, that counsel must enter his or her appearance. We did that within a month or so and requested the record because the BIA, according to the practice manual, provides transcripts. We don't go out and get transcripts. The BIA sends us a transcript. We requested a transcript, requested a briefing schedule, wrote to them months later, many months later, saying, what's going on? And then we get a response that is denied. Is that the reason for your delay? You were waiting for them to send you the transcript? Yes, yes. I was waiting for them to send me the transcript. I never got the transcript. My knowledge of the transcript came when the case, when we then appealed a second time to the court and we got the certified record. I never got the transcript. They never sent me the transcript so that the idea that I could have filed a brief somewhere along the way is just flat out wrong. According to their practice manual, the BIA sends out transcripts. It's not a matter of we ordering them. They send out transcripts with their briefing schedule. They never did that on this remand. Your understanding is that the practice is to do that upon receipt of your notice of appearance? At some point along the line. I mean, at some point along the line. That's certainly been my practice. I've even had a case recently on remand from this court where they sent me a briefing schedule. Certainly, on initial filings of appeals, the BIA always sends a briefing schedule. In fact, their practice manual, one of the points says they strongly encourage the filing of briefs. So, I was a little, my hands were a little bit tied, unable to file a brief because I didn't have the record. Asking for the record and not responding. The BIA not responding. So, we're left now with a situation where the BIA has gone back, looked at the record, determined that in discretion and did perhaps a better discretionary analysis than they did the first time, but they did it without benefit of counsel's ability to marshal facts, make arguments. I mean, the idea of It's a weird case because on that issue it's not a structural defect the way you have in a criminal proceeding where there's no right to counsel. You don't get into a prejudice analysis because it's structural. Here it's a statutory right to counsel and out of that arises either a 5th Amendment or 14th Amendment. It would be a 5th Amendment process thing. Arises out of that. What the BIA did upon remand was really looking at everything before it doing a different at least on the appearance of it, a different weighing of the equities. We have no jurisdiction to interfere with their weighing of the equities. So, even if you're right, and it seems to me you're clearly right that there was a trampling on of the right to counsel here. What good does it do your client? Because we can't interfere with their discretionary weighing. If you remand it to the board to say vacate this decision because it was compromised without counsel. This court appointed counsel, directed that it be the counsel that he have a counseled briefing done have an effective appellate counsel. If you remand to the board for a new decision, then this time we will submit a brief. Well, I think the stay is still in place. Because it was a discretionary determination which we now cannot do anything about. All the more reason that at the time the BIA was rendering its decision, you put forth your arguments with respect to the equities, his employment, his education, his years of being here, his brothers. Exactly. I mean siblings are a special classification under the Congress. The BIA seems to say he's not married and has kids. But they fail to recognize that Congress has set up several preference categories including siblings. He came here as a child. Is prejudice necessary? Do you have to show prejudice? I think in Kuzan we said there has to be prejudice. I think in Ponsleva which we had a number of years ago, there needed to be prejudice and Kuzan I think there needs to be prejudice. I would say there probably needs to be showing of prejudice. But I think the kind of prejudice we need to show is that there's a that we can't say for sure that the result would not have been different. Are you arguing a structural defect though? You're arguing the denial of skilled counsel to argue what was already before the BIA is prejudicial which to me sounds like the kind of structural defect that arises in a criminal case. Maybe that's here, I don't know. It sounds like what you're arguing. I think that when you have a complete denial of counsel, where this court has essentially ordered counsel and said to the BIA, you need to have a counseled appeal here. The failure of counsel to well I take that standard I think from the 9th Circuit where that Balthazar's I'm trying to remember the name of the case but it's cited in the brief that basically says if we cannot look toward if we cannot see for sure that there would be a difference in the decision, if you can't be if you can't see for sure that there would be like a potential effect potentially effected the outcome potentially effected the outcome that's the standard for determining prejudice. Whether we call it structural or not, I don't think really matters. I think what this is a very fact-intensive area. There's no magical methodology. It's really weighing and balancing and I think those are precisely the skills that an attorney brings to bear on this kind of case. It's that weighing and balancing of cases. Yes. Mr. Morley, there's a voice from beyond the courtroom. I hear you loud and clear, Judge. What about the fact that this court ordered certain things to be done. They were completely ignored by the BIA to the point that your client may or may not have been prejudiced depending upon what you produced, but where does the court come in? Don't we have an authority to require certain actions to be taken by an agency of the government? Even though there is a discretionary standard that the BIA has? I think that the discretionary standard is something that this court cannot interfere with. The Congress has stripped the determination of discretion, but I think this court can and must protect something as a statutory and constitutional right to counsel, which was effectively denied by the BIA. Now, if that goes under the guise of the BIA, a federal agency, ignoring a lawful order of this court, that's another way to look at it. We didn't brief that. We didn't argue that. We felt strongly enough just simply on the grounds that Mr. Forteau was entitled to counsel. The court ordered that he have counsel. Counsel volunteered time, willing to do it, made a request to the board to present so that he could effectively do it, and was then just basically ignored by the board. You're not the only one that's aggrieved by this. When Mr. Forteau, your client, had moved for a stay, I was on the panel that granted that stay and that ordered these further proceedings to go on with brief and with counsel. I must say that I feel somewhat aggrieved that the kind of cavalier treatment that we received, that an order of this court received, had been instituted. You're not the only one. I agree with Your Honor, and I think that this court has a basis to view the actions of the BIA with great alarm because it did effectively ignore an order of this court. I guess on two occasions. One, by gutting his right to counsel, and two, by permitting him to be removed, although that wasn't the BIA action, that was Department of Homeland Security, in spite of the existence of a stay. So, that's a separate agency that did it, but there is the inherent right of the court to vindicate its orders. Again, that's nothing that we actually took on as a brief because we felt we were so strongly right on the effect of counsel issue. Did you save time for rebuttal? I saved time for rebuttal, so if no further questions, I will take a seat. Thank you. Good morning. I'm Nancy Friedman for the Attorney General. Can you hear me, Judge Garth? Yes, I can. Good morning, Judge Vandell. Nice to see you again, Judge McKee. Good seeing you. Let me go back for a moment and look at this court's prior order from July 2007. The last paragraph says we grant the petition for review and remand for further proceedings. The clerk will locate counsel willing to represent petitioner if petitioner so desires. That was the whole of the court's order for sending the matter back to the board. And then counsel entered his appearance. Counsel entered his appearance September 19, 2007, and this court's mandate issued on well, actually a week before that, September 10, 2007. Wouldn't the BIA logically believe that if we did appoint counsel and counsel entered his appearance that we wanted the BIA to consider what counsel had to say and act only upon hearing from counsel? I mean, the BIA went so far as to criticize his reply brief, noting it to be insufficient. That was before the prior court decision. But even so, was there a disconnect here that the BIA didn't know counsel was appointed? No, Your Honor. Or knowing counsel was appointed, decided not to send out a transcript and basically run roughshod over the order that counsel was representing petitioner? No, Your Honor. Let me try to address each one of your questions if I can in order. The matter was remanded back to the board and counsel entered his appearance. He could have immediately either filed a brief with the board Are you saying he couldn't because he had no transcript? Well, the transcript of course had been prepared and filed with this court prior to the court's 2007 decision. Counsel could have done any number of things to obtain it. Call the court, call my office. We would have sent it out immediately. We have CDs of the certified record. That didn't happen. But the petitioner then wrote and said, what's happening to my case? And the BIA responded, it's still pending. Wouldn't the BIA then say, you know, your counsel should file something? It seems like just such a disconnect here. And then for the board to issue an opinion, knowing that counsel's been appointed, you seem to be putting the total onus on counsel. Okay. He should have, should have, should have. But, don't you think the BIA should at some point, I mean, what we would do, we'd enter a clerk's order saying, you know, file your brief, do something. We've got to pursue this. Well, to answer your question if I can, Judge, the procedures on remand from this court are what the court instructed. The board is not, in this case, reviewing the immigration judge's decision as it does when a notice of appeal from an immigration judge's decision is filed in the ordinary course of proceedings. Here, the board's directive was to do what the court instructed. The court instructed that the board, you know, review what the court pointed out were its errors in making independent factual findings. The record was complete. There was nothing to be added. It was before the board, and the board's job, so to speak, was to follow this court's instructions, which it articulated clearly. Counsel was appointed, though, but we knew that when counsel was appointed. We obviously thought that having counsel represent him on remand could add something. Well, Judge, then it was up to counsel to do something. The board followed... I'm sorry, Judge Garth. I did not hear you. I beg your pardon. Your whole pitch is that counsel didn't do what he was supposed to do, although he had endeavored to do so, and he was backed up by this court's order. And I feel offended by the fact that we were just ignored in every respect on this, and that this man may be, you would say, should be deported despite all this. Well, I think that there's a right to counsel and the right for counsel to be heard. And I think that it's about time that the BIA recognize that there are other authorities other than the BIA. Agreed, Your Honor. Agreed. And I think the board did that. He was not denied his statutory right to counsel. I disagree that he has a constitutional right to counsel. I think he has a statutory right to counsel, and that right was afforded him. As opposing counsel referred to Ponce Leyva, I will do the same. He was, as in Ponce Leyva, he was not denied his statutory right to counsel. Counsel just didn't do anything. Exactly as this court recognized in other cases. There were a number of things he was able to do. He could have filed a brief with a motion asking the board to accept the brief. He could have filed a brief at any point. He didn't do that. He didn't do anything other than enter and appearance. Let's fast forward to when he asks for a briefing schedule. I don't see that in the record, Your Honor. You're contesting whether or not he asked for it? It was June 7th, I think. You're contesting whether or not he asked for a briefing schedule? I'm not contesting that he asked for a briefing schedule. I'm saying that that does not appear in the record of proceedings. The counsel attached a letter that he states that he sent to the board in June. It's not part of the certified administrative record. That's the problem. I don't know whether Does the BIA routinely send out briefing schedules? On remand? From this court? No, they do not. That's the thing, Your Honor. A briefing schedule Well, but the counsel's just been appointed so counsel has never filed anything before. And we have new counsel. And you would think that the BIA would, I mean, if counsel's been appointed, I think the BIA would require to hear from counsel before action. But Your Honor, this court didn't require didn't say we appoint counsel but the BIA, you can act on remand even though you don't hear from counsel. But he could have gone right ahead and filed a brief. You know, part of me also is concerned about that aspect but also concerned about the fact that when this appeal was taken and this was apparently he was aggrieved by this, that the BIA didn't say, oh, we'll reconsider this and let's hear from counsel. And part of me says that the underlying equities here that the BIA based upon the overall record, that counsel might have been able to be pretty persuasive with what went on here. I mean, the BIA totally dismissed the fact that, you know, he was very close to his siblings and niece and nephew, his employment record, he's a marathon runner, he went to college. The history of employment taxes are an issue. Your Honor, I have to disagree with that characterization. They didn't dismiss it. That's simply weighing the equities and deciding how much weight you give to each of those things. But that's where counsel is very important. Then counsel could have filed something. He didn't do anything for almost a year. It's not right that he didn't do anything. He filed an appearance and then did  But here we are in May of 2010. It's in everyone's interest, I think, and you'd think you'd agree it's even in your client, the U.S.'s, interest, to make sure that we get this right. So what is the harm since this guy's already been deported once in violation of his stay of removal? What is the harm with sending him back now to the BIA, along with Mr. Morley, and letting Mr. Morley make the argument? It may be a total exercise in furious Shakespeare would say, full of sound and fury signifying nothing. It may be that. But it may be, if the BIA is sincere in wanting to get this right, they may listen to Mr. Morley, and it may be able to make an impact on them. Everyone along the line agrees this is a very close, at least the IJ said it was a very close case. I think the BIA agreed it was a close case because Mr. Forto has a lot more equities than we usually see. He has these two criminal convictions which weigh like a thud on the other side of the scale. Why not let the BIA hear what Mr. Morley has to say and furnace everybody, including your client? Well, the why not is because that was all before the board already, and the board in decision number two, the one we're looking at today, followed what the court instructed it to do in not refinding the immigration judge's factual findings. So you're saying we were foolish in appointing counsel the second time? Because your argument is, look, he didn't need counsel the second time because as I said in speaking to Mr. Morley, this is strictly a factual argument. The facts are really not in dispute. It's really how you assess the good stuff versus the bad stuff. He didn't need a lawyer to do that, so we were wrong in ordering counsel the first time. But we did that. So why not let him have the benefit of counsel? He did have the benefit of counsel, Your Honor. And remand. He had that in the last... When I say benefit, I mean not just somebody sitting in office someplace on planet Earth technically represents the guy. But whoever that is someplace on planet Earth has an opportunity to let the agency know what he or she, the attorney, thinks about his client's case or her client's case and is able to make an argument to the agency not just as a lawyer breathing air somewhere, and therefore the client has the benefit of a living, breathing counsel. Well, I feel like there's nothing I can say at this point, honestly. I really... I feel like there's nothing else I can say that I haven't said other than... I do want to point out, Judge McKee, that... I don't get your point. You're saying McKee's beating a dead horse, and why doesn't he shut up already? And maybe you're right. No, Your Honor. No, Your Honor. I am not. I just want to clarify if I might that Mr. Forteau was not deported when a court stay was in effect. He was deported without us informing the court that he was going to be deported, and that same day the court did order a stay and directed that he be returned to the United States. I apologize for that. And how much longer was he returned? Several months. Several months later. If there was undue delay, I apologize for that. We did the best we could with it, and there was an error in communication in not informing the court that he was going to be moved. Yeah, those things happen. Yes. Errors in communications happen both ways. That's exactly what happened, and I apologize for that. And does the court have any other questions? No. Judge Garrard, anything? No. Thank you very much. Thank you very much. I'll be very brief unless the court has more questions. I did more than simply enter my appearance in September of 2007. I asked for the record, and the letter says, kindly forward to me the record in this matter, as I do not have it in my files, and the Third Circuit did not have it to forward to me. The Third Circuit did not what? Have it to forward to me, because it had already been returned. We did not have it? That's curious, because it was here before the matter was remanded. Yes, I understand that. By the time I entered my appearance, I hadn't gotten over to the court to get it, and I assumed the BIA would send me a copy. So I entered my appearance, I asked for the record, and my mistake in all of this was probably to have sat relying on the board to eventually do something, issue a briefing schedule, send me the record. I relied upon this government agency to act properly and efficiently. Basically a response to your letter. Yes, and thinking that I would get a briefing schedule, as I had in who knows how many BIA cases that I've handled, and with it the record, or the transcript, and I acted in reliance upon that. Have you handled matters on remand? A few. I mean, there have been a few. The interesting thing is recently I had one where the board actually issued a briefing schedule. It was a case I'd handled previously, so I had the record and I briefed it back to the board. So there has been that matter. And also, long delays of the board are not unusual. We've noticed that. So that yeah, maybe I could have pursued things a little sooner and said what's going on, but I'm kind of used to things kind of falling into the proverbial black hole there. The other thing is, when this came back on remand, it was because we had objected to the basic finding of fact by the board on two matters without using a clear error standard. So on the one hand, you might even think that it would be the AG who would file first and say, you know, have something to say. Okay. Thank you, Congresswoman. Thank you. Ms. Friedman, thank you very much. Good seeing you again. Next matter is